2k245
j 156   59

IN THE MATTER OF THE APPLICATION OF ROBERT HOLLISTER and WILLIAM WILKINSON, Appellants, *v*. THE HOLLISTER BANK OF BUFFALO, Respondent.

The stockholders of a bank organized under the laws of this State, that becomes insolvent are not entitled to receive or have divided among themselves any of the assets of the bank until its debts and liabilities are fully paid and discharged.

The stockholders of an insolvent bank had been assessed upon their capital stock, to supply a deficiency in the assets of such bank to pay in full its liabilities, pursuant to the provisions of the Constitution (§ 7, art. 8), and of chapter 226, Laws of 1849, a part of which assessment or apportionment proved to be uncollectible, owing to the insolvency of stockholders and other causes. Upon an application by the receiver to the Supreme Court for an order to divide the residue of the assets in his hands *pro rata* among the creditors, certain of the stockholders who had paid their ratable proportion of the apportionment made upon them as aforesaid, appeared and claimed that by virtue of such payment they had become creditors of the bank and were entitled, with other creditors, to be included in such *pro rata* distribution.

*Held*, that they could not occupy the anomalous position of debtors and creditors at the same time. (POTTER, J.)

That they are by the statute made debtors to the creditors of the corporation, and must remain such until the creditors are paid the amount of the apportionment. (*Id.*)

It follows that as that apportionment was never wholly collected, it could not be wholly paid and the debts of the corporation thereby discharged; and that any assets of the bank from which moneys had been realized by the receiver, since such apportionment upon the stockholders, must be applied to the payment, so far as they would go, of such debts.

In short, the condition provided for in section 24, of chapter 226, Laws of 1849, under which stockholders may become entitled to a distribution of the assets of the bank, had not been reached.

The doctrine in 27 N. Y., 393, though not strictly relevant to the issue in this case, commented on and approved by DAVIES, J.

THIS is an appeal from an order of the General Term of the Supreme Court of the eighth district, which affirmed an order of the Special Term. The order appealed from was made in November, 1864, and it directed the receiver of the

said bank to divide and pay to the creditors of the Hollister Bank $12,126.52 of moneys remaining in his hands. In February, 1860, by virtue of a proceeding under the statute of April 5th, 1849 (chap. 226), an apportionment had been made by the receiver, and sanctioned by the Supreme Court, against the stockholders of the bank to the amount of $80.45 upon each $100 of the capital stock held by each stockholder of the bank for the purpose of paying the creditors of the said bank. The capital stock of the bank was $200,000. The indebtedness to creditors at the time of the apportionment was $160,900. The whole amount of this apportionment was not collected by reason of the insolvency of some and of the non-residence of others of the stockholders. After this apportionment was made, another debt was established against the bank of above $6,000. The unpaid debts of the bank at the time the order appealed from was made, exceeded $50,000 ; and if the $12,156.22 had been divided according to the direction of the said order, there would still have remained above $40,000 due to the creditors, and the entire assets of the bank would be exhausted.

The appellants are stockholders, who claim a share of the $12,126.52 on the ground that an apportionment had been made against the stockholders of the bank sufficient nominally to pay the entire debts which had at that time been established against the bank ; that by their payment of their proportions of such assessment, they became creditors of the bank, and are entitled to a *pro rata* dividend from such assets.

*H. C. Tucker*, for the appellants.

*Ganson & Smith*, for the respondents.

POTTER, J. By a stipulation between the parties, the only question to be decided on this appeal is, the right of the appellants to a share in the money in the hands of the receiver. The appellants claim that, having paid the full amount of the judgments against them, they became creditors to the extent of the sums they paid, and are entitled to a

return of the amounts they so paid, *pro rata* with other creditors.

The proceeding in question is a special proceeding under the statute, entitled "An act *to enforce the liability of stockholders* in certain banking corporations and associations as prescribed by the Constitution, and to provide for the prompt payment of demands against such corporations and associations," passed April 5, 1849. If the object and intent of this statute was to be determined by its title, the leading feature in its character would seem to be clearly to enforce the payment of the debts (of the creditors of the corporation) against its stockholders upon an individual liability, and not to reimburse and indemnify stockholders for any such debts they may have paid for the corporation or association upon such individual liability.

If we look at the provisions of the act itself, we find in the first section that "the stockholders of such corporation or association shall be individually responsible equally and ratably," for the amount of its debts and liabilities, "such responsibility to be enforced as hereinafter provided and in no other manner." It is not denied that the proceeding in question was in form, according to the manner in the same act afterward prescribed and provided. The several sections of the said act from the fourteenth to the twentieth inclusive, provide as to the manner of making the debts of the insolvent corporations become liabilities against its stockholders in the form of final judgments, and upon which execution or executions may issue. The twenty-first section directs the moneys raised upon such judgments to be immediately distributed and paid over to the creditors of such corporation or association. By the twenty-fourth section of the act, there is a provision that "*if, after* paying the debts and liabilities of such corporation or association as therein provided, and defraying all the expenses of the proceedings, there shall remain or come to the hands of the receiver any *other* assets or effects of such corporation or association, the same shall be converted into cash as therein before directed, and shall be paid to the stockholders upon whom any such debts or liabil-

ities were apportioned in just and equal proportion to the sums contributed and paid by them." This whole proceeding, it is seen, is based upon the provisions of this particular statute. The liability of the stockholder is created by the same statute, and authorized by the Constitution. (§ 7, art. 8, Const. 1846.) His rights to relief, and the manner of and the remedy by which that relief is to be obtained, all depend upon the provisions of the same statute. The statute itself provides no other relief to the stockholder for his liability to and payment of the debts of the corporation to creditors, than is provided in the twenty-fourth section of that act, to wit, the surplus of assets or effects that may remain or come to the hands of the receiver after discharging the debts and liabilities of the corporation or association.

The claim, therefore, of the appellants, as stockholders only, not being creditors of the corporation or association in any other sense than in the payment of their individual liabilities, cannot be predicated upon this statute. The rights and remedies of the *creditors* of this corporation are, by the first section of the said act, expressly limited and confined, to be enforced by the provisions of that act, " *and in no other manner.*" These stockholders, appellants, in order to be entitled to a distribution of these assets, must first become *creditors* of the corporation. The statute does not, in terms, declare them to be such. If they are such constructively, their remedy is provided by the twenty-fourth section of the statute, and they can enforce it "in no other manner." They cannot occupy the anomalous position and stand both as debtors and creditors at the same time. They are, in the first place, expressly made debtors to the creditors of the corporation, and such they must remain until the creditors are paid the amount of the apportionment. After such payment, not before, they are, by the same statute, made creditors of the surplus that may remain, and of that only. This is the only reasonable and fair construction which this statute is susceptible of. This is also in conformity with the universal rule of construing statutes, " that, where a statute confers a right, and also, in the same statute, prescribes an adequate means of protect

ing or enforcing it, the right is confined to the statutory remedy." (*Dudley* v. *Mahew*, 3 Comst., 9.) This statute gave these stockholders, whom it thus made liable to pay the debts of the corporation, a right to the surplus assets and effects, and provided a remedy by which to obtain it. They became stockholders, knowing of their liabilities, rights and remedies. With these they must be content. They can bring no equities or common law principles to their relief. There is nothing in the first section of this act in the language, "the stockholders of such corporation shall be individually responsible equally and ratably," that interferes or comes in conflict with the construction we have given to its whole language. Were they not confined to the statute in question for their remedies, it would seem to be a mockery of all rules of equity to claim for them an equality or preference in the distribution of assets over the creditors of themselves, or over a corporation put or retained in existence by themselves, and clothed, by their acts and instigation, with a character of apparent credit and responsibility which has invited the confidence of others. The words last above cited from the act are satisfied, by their use in securing to the stockholders, as between themselves, an equal and ratable proportion or apportionment and liability to debts and a ratable and equal division of the surplus assets after the payment of the debts of the association.

I think, therefore, that the order appealed from was right and should be affirmed.

DAVIES, J. The Hollister Bank, of Buffalo, was an association organized under the general banking law of this State, and doing business as such at the time of its failure, in 1857. Upon such failure, one Alanson Robinson was duly appointed receiver, under the act of 1849, and such proceedings were had, in conformity with the provisions of that act, that it was ascertained and determined that the debts and liabilities of the said bank contracted after January 1, 1850, and remaining unsatisfied, with interest, at the date of the said ascertainment and apportionment, to wit, February 13, 1860, after deducting the moneys in the hands of

said receiver, applicable to the payment thereof, was $160,-900. The capital stock of the said bank was $200,000, and the said sum of $160,900, was, on the 13th of February, 1860, apportioned among the stockholders of said bank equitably and ratably, in proportion to the amount of stock respectively held and owned by them, and said apportionment was confirmed by order of the Supreme Court.

Such apportionment was only to the extent of eighty and forty-five hundredths per centum on the shares of stock held by each stockholder. On an application made to the Supreme Court by said receiver, on the 8th day of September, 1862, he represented, that, by reason of his inability to collect and realize the apportionment so made as aforesaid, from a large number of said stockholders, by reason of their insolvency and other causes, and by reason of a debt of $6,006.05, having been established against said bank since the 13th of February, 1860, and which was not included in the debts and liabilities of said bank, as ascertained on that day, the total amount of the debts and liabilities of said bank, contracted after January 1, 1850, remaining unpaid and unsatisfied, including interest to the said 8th day of September, 1862, was $93,141.89. The application or petition of said receiver, was referred to a referee, to make an apportionment of such remaining debt among the stockholders, who ascertained and determined that the amount of debts and liabilities of said bank remaining unpaid on the day of said apportionment, to wit, October 23, 1862, was $93,932.75, and the same was ratably and equitably apportioned among all of said stockholders, to an amount which with the former apportionment, equaled the amount of stock held by each person or stockholder in said bank. The amount so apportioned was $39,100. This apportionment was confirmed by the Supreme Court at Special Term, and, on appeal, the same was affirmed at General Term, and the stockholders, thus again assessed, appealed to this court. The single question presented on that appeal was, whether the first apportionment exhausted the power of the court, under the Constitution and the statute, so that a further apportionment or call could not

be made upon the stockholders to the full amount of stock held by them respectively.

Taking into view the provisions of the Constitution, and of the act of 1849, it is manifest that it was the intention of both the framers of the Constitution, and of the legislature, to make each stockholder liable to contribute to the full amount of his stock, if necessary, to pay off and discharge the liabilities and debts of the bank contracted after January 1, 1850.

The seventh section of article eight, of the Constitution, fixes the extent of the liability of the stockholder. It declares that the stockholders in every corporation and joint-stock association for banking purposes, shall be individually responsible, to the amount of their respective shares of stock in any such association, for all the debts and liabilities of any kind contracted after January 1, 1850.

The Constitution thereupon fixes the extent of the liability of each stockholder, to the full amount of his stock, provided such full amount is necessary to pay off and liquidate the debts and liabilities of the bank.

This court held that the power of the court under the act of 1849 was exhausted, and that, where one assessment had been made upon the stockholders for their respective shares of the liabilities of the bank, and had been confirmed, and it remained in force, no second assessment could be made to supply a deficiency resulting from the inability to collect the sums assessed on insolvent stockholders, or to raise funds to provide for the payment of debts of the bank not known or anticipated at the time of making the first assessment. *In the matter of Hollister Bank* (27 N. Y., 393), it was said, in the opinion, "that the act contains a complete and well digested system for one assessment, without any provision for a second. The contingency of the failure or inability of a portion of the stockholders to respond to the assessment, although it could hardly have escaped the consideration of the legislature, is not provided for in any way. The apportionment of the debts among the stockholders is directed to be made ratably in proportion to their stock, and a new

apportionment or assessment, if made under the direction of the statute, is to correct errors in the first, and not to supply a deficiency in its results." * * * " And that the statute gives no authority or jurisdiction to make more than one judgment, the first apportionment and judgment remaining unreversed."

It followed that, although there were debts and liabilities of the bank unpaid, to the amount of near $100,000, and a liability of the stockholders, as fixed by the Constitution and act of 1849, to the amount of near $40,000, remaining uncollected and unrealized, and pledged for the payment of those debts, yet, owing to the defect in the act of 1849, the courts had no power to enforce payment of the amounts still due and unpaid, by the respective stockholders of the bank. In June, 1864, the receiver appointed in this matter, presented his petition to the Supreme Court at Special Term, setting forth the proceedings therein, and that, of the aforesaid debts and liabilities of the bank, there yet remained unpaid and due the principal sum of $52,724.03, exclusive of interest, and that there were no assets, money or property in the hands of the said receiver or under his control, applicable to the payment of said debts and liabilities, except the sum of $12,610.15, which he had realized from the assets of said bank. He thereupon prayed the order of the court directing him to make a dividend of said sum among the creditors of said bank, in proportion to their respective demands, or for such other order as the court might deem just and right.

The court thereupon made an order directing said receiver to divide to and among the creditors of said bank, to whom the debts and liabilities thereof were owing, in proportion to their respective demands, the sum of $12,126.52, and that the residue of said moneys, being the sum of $483.63, be retained by said receiver, subject to the further order of the court.

Upon this hearing, the appellants herein, certain stockholders of said bank, who had been assessed their ratable proportion of the debts and liabilities of said bank, and who had paid to said receiver the amount of their respective assessments, appeared and claimed the right to participate in

said dividend to the amount of such payments respectively made by them—in other words, that, by the payment of such apportionment and assessment, they respectively became creditors of the bank to the amount of such payments, and were entitled to share equally and ratably with the other creditors of the bank in the dividend about to be made of the moneys in the hands of the receiver. Such claim was disallowed by the Special Term, and, on appeal to the General Term, the order was affirmed.

From that order these stockholders now appeal to this court.

The Constitution, and the statute passed to effectuate its mandate, make every stockholder of this bank liable to the creditors thereof to an amount equal to his stock, or to his just proportion of that amount, if the whole is not required. (*Matter of Empire City Bank*, 18 N. Y., 199; *Matter of Reciprocity Bank*, 22 N. Y., 9; *Matter of Hollister Bank*, 23 N. Y., 508.) In the latter case we said: "The assets of the bank are deemed the primary fund for the payment of its debts. The creditors, however, are not to be delayed beyond the period of six months for the purpose of converting those assets before proceeding against the stockholders. All that can be realized in that time by collections, or by a sale, to which no reasonable objection exists, is first to be applied. If, however, there is sufficient reason for postponing a sale of any portion of the demands due to the bank beyond the one hundred and eighty days, the creditors are not bound to wait for a further sale, but a dividend must be made, and the stockholders must pay the deficiency and receive the avails of the remaining assets."

The policy of the statutory provisions would seem, therefore, to be obvious. In the first place, it is made the duty of the receiver to convert into money, with the least possible delay, the assets of the bank, and, within the time prescribed by the statute, to divide the proceeds among the creditors of the bank. In case of a deficiency of means to pay all the debts, the same are to be divided *pro rata*. And the stockholders must pay such deficiency. That is the law as enuncia-

ted by this court in the cases above cited. The stockholders are not to receive or have divided among themselves any of the assets of the bank until its debts and liabilities are fully paid and discharged. It would be an anomalous state of things if the debtor is to be paid the assets and money which the Constitution of the State, the statute law and the decisions of the courts, all declare belong to the creditor, leaving his debts unpaid. It is impossible that the legislature ever contemplated such an absurdity, or that the act of the legislature of 1849, or the decisions of this court, can be perverted to work such a result. Such a position is in direct conflict with the provisions of section 24 of the act of 1849. (Laws of 1849, ch. 226.) It declares, " if after paying and discharging the debts and liabilities of such corporation or association, as herein provided, and defraying all the expenses of the proceedings, there shall remain, or come to the hands of the receiver, any other assets or effects of such corporation or association, the same shall be converted into cash, as herein before directed, and shall be paid to the stockholders, upon whom any such debts or liabilities were apportioned, in just and equal proportion to the sums contributed and paid by them."

This is an emphatic declaration by the legislature that nothing is to be paid to the contributing stockholders, until after the payment and discharge of all the debts and liabilities of the bank. In the present case, the assets of the bank, in addition to the contributions made by the stockholders, are inadequate to discharge those debts and liabilities, and a large deficiency still remains. For these unpaid debts and liabilities the stockholders are severally liable, to the extent of their capital stock, and even if they contributed the whole amount of such capital stock there would still be a deficiency. But as we have seen, such additional contribution cannot be enforced, owing to the defects in the act of 1849, and it is therefore contended that such contributing stockholders have had thereby their relations to the bank entirely changed; that instead of being debtors for the amount yet uncontributed of their capital stock, they have become creditors in the amount

already paid and contributed by them under the act, and as such are entitled to participate, with the other creditors of the bank, in the contemplated dividend of the remaining assets.    This position is wholly untenable, and the orders of the Special and General Term excluding them from such participation were clearly correct, and should be affirmed with costs.

All concur.

Judgment affirmed.