(100 App. Div. 125)

### CITY OF ROCHESTER v. BLOSS.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. TAXATION—DELINQUENCY—COLLECTION—STATUTE—CONSTRUCTION.

Laws 1903, p. 1187, c. 522, § 3, providing that all taxes theretofore spread on the assessment rolls in the city of Rochester may be collected by the corporation counsel by action, and that the remedies therein provided shall be in addition to the other methods provided in the charter of the city for the collection of taxes therein, and not dependent on them or any of them, authorizes an action for the collection of taxes, with 12 per cent. interest from September 15th, when the tax is not paid until

after that date, and 5 per cent. additional as a charge for collection, as required by the direct provisions of the Charter of 1902, §§ 89, 91.

Hiscock, J., dissenting in part.

Appeal from Special Term, Monroe County.

Action by the city of Rochester against Joseph B. Bloss. From an order denying plaintiff's motion for addition to the judgment of 5 per cent. as charge for collection of taxes and 12 per cent. interest, plaintiff appeals. Reversed.

The action was commenced on the 5th day of September, 1903, to recover $182.47, the amount of a tax duly levied and assessed by the plaintiff against the defendant for the year 1902, together with 5 per cent. added thereto and 12 per cent. upon such total sum from the 15th day of September, 1902. The defendant demurred to the complaint upon the ground that it appears upon the face thereof that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and judgment was directed accordingly, with costs to the plaintiff, but with leave to the defendant, upon payment of costs, to withdraw the demurrer and answer within 20 days, and that in case of the failure of the defendant so to withdraw said demurrer and to answer and pay the costs final judgment be entered against him for the relief demanded in the complaint. Instead of entering final judgment in accordance with the direction contained in the interlocutory judgment, there being a controversy as to the amount, the plaintiff made a motion at Special Term for judgment in accordance with the prayer of its complaint, and upon the decision of such motion the order appealed from was made. While, undoubtedly, the plaintiff had a right, under the terms of the interlocutory judgment, to enter judgment for the relief demanded in the complaint, the defendant having failed to answer, both parties seem to have consented that the question involved might be determined upon the motion for judgment made in the manner indicated; the question being whether in this action the plaintiff is entitled to recover, in addition to $182.47, the tax originally assessed against the defendant, which he concedes the plaintiff is entitled to, 5 per cent. thereon and 12 per cent. per annum upon such total sum from September 15, 1902.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

William W. Webb, Corp. Counsel (William A. Sutherland, of counsel), for appellant.

Isaac Adler, for respondent.

McLENNAN, P. J. The facts are not in dispute. At all times during the year 1902 the defendant was a resident of the city of Rochester. In said year a tax of $182.47 was duly levied, assessed, and imposed by the common council of said city against the defendant as and for a part of the general city taxes of said year. Afterwards the general tax rolls of said city, containing the tax against the defendant, were delivered to the treasurer of the city, together with a warrant in proper form, and duly executed, commanding him to receive and collect such taxes. The treasurer entered upon the performance of such duty as commanded, gave the notices required by law. The defendant neglected and refused to pay the tax of $182.47 levied and assessed against him as aforesaid, together with the percentages imposed by the charter, and, after demand duly made therefor, this action was brought.

The charter of the city of Rochester in force in the year 1902, at the time the tax in question was levied, provided:

"Sec. 89. The city treasurer shall receive the amount of any tax levied in the assessment-rolls during the month of May, and on all amounts not paid on or before the last day of May succeeding the levying of such tax, he shall receive for the contingent fund of said city, the following additions as charges for collection, namely: If the same be paid after the last day of May and on or before the last day of June then next, he shall charge and receive an addition of one per centum; if paid after the last day of June and on or before the last day of July, then next, an addition of two per centum; if paid after the last day of July and on or before the fifteenth day of August, then next, an addition of three per centum; if paid after the fifteenth day and on or before the last day of said month of August, then an addition of four per centum; if paid on or before the first day of the month of September, then next, and on or before the fifteenth day of the same month, an addition of five per centum; and if paid at any time after the fifteenth day of September, such addition of five per centum, and also, interest from that day, at the rate of twelve per centum per annum."

"Sec. 91. It shall be the duty of the city treasurer upon all taxes remaining unpaid on the fifteenth day of October next succeeding the completion of the said assessment rolls, to issue as many warrants as he shall deem proper under his hand, and directed to any person whom he may see fit to appoint a collector of the taxes specified in such warrant, commanding such person. as such collector, to levy the amount of said tax, and an additional amount of five per centum, except that in no case is the amount so added to be less than twenty-five cents, and, also interest at the rate of twelve per centum per annum from the preceding fifteenth day of September, and the fees of said collector, by distress and sale of goods and chattels of the person against whom the said warrants shall be issued, or of any goods and chattels in his possession, wheresoever the same shall be found within said city, and to pay the same to the city treasurer, and return such warrant within twenty days after the date thereof; and no claim of property to be made to such goods and chattels so found in possession of the said party, shall be available to prevent a sale.  *  *  *"

Under those provisions it is plain that at the time this action was commenced the defendant was liable not only for $182.47, the amount of the tax, but also for the percentages imposed by the sections of the charter adverted to, to wit, 5 per cent. additional upon the tax, and 12 per cent. per annum upon such total amount, provided the collection of such taxes and percentages were enforced by the treasurer of the plaintiff in the manner prescribed by the charter. The "percentages" are designated in the charter "as charges for collection," and when collected are credited to the contingent fund of the city. They were in no sense a part of the treasurer's compensation, and the cost or expense of collection was provided for by an additional per cent. and fees to be paid to a collector appointed by the treasurer. Under the charter, when a tax was levied the city was entitled to receive its amount, and when the payment of such tax was deferred beyond the time or times specified in the charter the city was entitled to receive such tax with the percentages added. All became an asset of the city, and it is of no consequence that the amount of the tax originally levied went into the general fund and the percentages into the contingent fund. The person against whom the assessment was made became obligated to pay both in case payment of the original tax was deferred, and could only be relieved from such obligation by payment. It would appear that the city of Rochester experienced difficulty in promptly collecting taxes by the method prescribed in its charter, and it was doubted whether an action as for a debt could be maintained to collect the same. At all events, chapter 522, p. 1187, of the Laws of 1903 was passed, which provides

that an action at law may be maintained for the collection of delinquent taxes. Section 3 of the act reads:

"All taxes heretofore spread upon the assessment rolls of the various wards in the city of Rochester, may be collected by the corporation counsel, either by action, or by supplementary proceedings, or by foreclosure of tax liens without regard to the date when the said taxes were so spread, and the statute of limitations cannot be interposed as a defense thereto. The remedies herein provided shall be in addition to the other methods provided in the charter of the city of Rochester for the collection of taxes in the said city of Rochester, and not dependent upon them, or any of them. No certificate of the mayor of the said city of Rochester, made by said mayor under section one hundred and four of the charter of said city, of failure to redeem land sold for taxes, now or hereafter recorded in the office of the county clerk of Monroe county, shall be discharged until all city taxes which are a lien upon the premises described in said certificate shall have been paid. Notice to redeem from sale for taxes, may be served at any time after the expiration of two years from the date of said sale. Upon the foreclosure of tax liens in actions brought in the Supreme and County Courts, all taxes due the city of Rochester may be included in the action of foreclosure and be satisfied from the proceeds of the sale of the premises. Where several lots or parcels of land are owned by the same person or persons, distinct tax liens upon the separate lots and parcels of land so owned may, at the option of the city of Rochester, be foreclosed in one action, and actions now pending may be consolidated, in the discretion of the court, upon such facts being shown."

It is claimed by the respondent that an action like the one at bar can only be maintained under and by virtue of the statute of 1903, referred to, and that such statute does not authorize a recovery for the "percentages," but only for the "taxes heretofore spread upon the assessment rolls." Of course, such "percentages" were not, and could not have been, actually spread upon the rolls. We will assume, without deciding, that the plaintiff prior to the passage of chapter 522, p. 1187, of the Laws of 1903, did not have the right to maintain an action as for debt to recover taxes duly assessed by it. It was so held at Special Term in City of Rochester v. Gleichauf, 40 Misc. Rep. 446, 82 N. Y. Supp. 750, and evidently that decision led to the passage of the act in question. If, as we are constrained to hold, that act authorizes a recovery in an action like this, not only for the original tax, but also for the percentage incident to such taxes, for the entire indebtedness of a taxpayer resulting from a particular assessment, what the city was or was not authorized to do prior to the passage of such act is purely an academic question. For the purposes of this appeal we only deem it necessary to ascertain the true scope and meaning of the act of 1903, and to that end we may consider not only the language of the act, but also its purpose, and what would be the result if the interpretation contended for by the respondent should prevail.

The act "purports to authorize the plaintiff to employ means other than those specified in its charter to enforce payment of taxes." It provides:

"The remedies herein provided shall be in addition to the other methods provided in the charter of the city of Rochester for the collection of taxes in the said city of Rochester and not dependent upon them or any of them."

If respondent's contention is correct, such additional remedies are only available for the purpose of collecting a part of the indebtedness of any delinquent taxpayer. As we have seen, under the charter, after

the 15th day of September in any year, the amount of any unpaid tax becomes absolutely and irrevocably fixed, and is made up of the original assessment with 5 per cent. thereof added, and that total bears interest at the rate of 12 per cent. per annum until paid. Upon any day, by a simple mathematical calculation the amount due to the city from any taxpayer may be ascertained. No officer of the city has authority to change or vary the amount; no one is clothed with any discretion in the premises. It was the duty of the plaintiff's officers in any case to collect the exact amount, no more and no less. They were charged with the duty of collecting the indebtedness, interest as well as principal; and it is difficult to see why an additional remedy should be given for the collection of the principal, and not of the interest. We think the fact that such interest was not spread upon the assessment rolls does not justify the interpretation contended for. The collection of the percentages might be quite as important to the city as the original tax in case payment was long deferred. The fair meaning of the language of the act is that it applies not only to the collection of the taxes spread upon the rolls, but also any other sum or sums which are an incident thereto, and which, by the provisions of the charter, the city becomes entitled to by reason of the nonpayment of such taxes. We may take judicial notice of the fact that, because of the delay in the payment of taxes after they become due and payable under the law, municipalities are compelled to make loans to meet current expenses, and are compelled to pay interest thereon, which, to that extent, adds to the burden of their inhabitants. It would be inequitable for any taxpayer to neglect or refuse to pay his taxes when due, and thus add to the burden of others, and escape all liability for such action. To meet just such a condition, the Legislature has provided that such delinquent shall be compelled to pay to the municipality certain percentages.

Again, if respondent's contention is correct, it is entirely optional with the corporation counsel whether a delinquent taxpayer shall be compelled to pay his original tax or such tax with the percentages added. It will not be seriously contended that if in an action like the one at bar a recovery is had for the original tax the percentages could be recovered by the city treasurer in a separate action under the provisions of the charter. And so, even if the city treasurer was disposed to enforce the payment of the entire amount due and owing to the city by the delinquent, the corporation counsel could commence an action and demand only the amount of the original tax, and thus relieve the delinquent from the payment of the percentages, no matter how long payment had been deferred. We think the Legislature did not intend by the act in question to vest any discretion either in the corporation counsel or city treasurer as to the amount which the delinquent taxpayer should be compelled to pay, but that the sum was fixed absolutely and irrevocably, and that by the act there was simply another means afforded of collecting the same, to wit, by an action as for debt, which includes the interest and all other incidents necessarily pertaining thereto.

It is concluded that the past-due interest, the percentages fixed by the statute, are as much a part of the tax as the principal, which is also past due; that all constitute one indebtedness, resulting from a single municipal act; and that all may be recovered in this action by means of

the additional remedy given by chapter 522, p. 1187, of the Laws of 1903. Any other construction would be inequitable and unjust, would open the way to fraud and collusion, would permit a corporation counsel to determine whether the citizen who has neglected to pay his taxes when due shall be compelled to pay the entire amount owing to the municipality or only a portion thereof. We conclude that the order appealed from should be reversed, and that judgment should be ordered for the plaintiff for the relief demanded in its complaint, with costs.

Order reversed, with costs, and motion granted, with $10 costs, and judgment ordered for the plaintiff for the relief demanded in the complaint, with costs. All concur, except HISCOCK, J., who in separate opinion concurs for reversal, but not for the amount for which judgment is directed.

HISCOCK, J. (dissenting). While, for reasons to be stated, I believe that the order appealed from should be reversed, I am not able to agree with my associates in the view expressed in the prevailing opinion that plaintiff is entitled to recover percentages and interest at the rate of 12 per cent. in addition to the taxes proper. In reaching a conclusion in favor of such recovery they assume that plaintiff could not maintain an ordinary action at law for the recovery of taxes in the absence of the enabling statute which is referred to. I think that upon established law this assumption is necessary, and that, in the absence of said enabling act, two principles would stand in the way of the maintenance of this action. In the first place, it is the ordinary rule that when a statute gives a right and prescribes a remedy, such remedy is exclusive. This rule is so familiar as not to require the citation of authorities. The charter of plaintiff fully establishes such right and remedy in respect to taxes. In the second place, I do not believe that an ordinary tax, such as is involved in this case, constitutes an obligation or indebtedness which may be enforced by an action at law in the absence of express provision. I do not lose sight of the fact that the learned counsel for the appellant has cited many authorities which he claims establish a different doctrine. Without attempting to review them at length, most of them may be clearly distinguished in their facts from those presented upon this appeal. It is true that the case of Torrey v. Willard, 55 Hun, 78, 8 N. Y. Supp. 392, does, in a very brief and cursory manner, seem to hold in accordance with his claim. But the weight of authority, both in this state and elsewhere, is in favor of defendant's contention upon this point. Cooley on Taxation (2d Ed.) p. 16; City of Rochester v. Gleichauf, 40 Misc. Rep. 446, 82 N. Y. Supp. 750; City of New York v. McLean, 57 App. Div. 601, 604, 68 N. Y. Supp. 606; Durant v. Supervisors, 26 Wend. 66; City of Camden v. Allen, 26 N. J. Law, 398. Therefore plaintiff's right of recovery herein must be measured by the statute specially conferring the right to bring this action, and the precise question which must be met is whether the terms of that statute can be so construed as to include percentages and an unusual rate of interest allowed by the provisions of the plaintiff's charter in case of taxes not duly paid.

So far as the percentages are concerned, they are a matter of arbitrary creation under the statute. They have no necessary or inherent

connection with the taxes proper. While the sum of 12 per cent. per annum to be added to the aggregate of taxes and percentages is called "interest," it also is clearly, by its excessive rate, made a penalty, intended for the punishment of those who do not pay their taxes. The existence and collection of these extra sums, whether called percentages or interest or penalties, are entirely dependent upon and limited by the charter provisions which created them. They are applicable to that particular method of enforcing the payment of taxes. Provision is made in the charter for carrying them into the warrant to be delivered to the collector. The percentages, at least, if not the specified interest, are provided as "charges for collection," and of course the provision for the expenses of collection relates solely to the expenses of the method of collection provided in the charter. The enabling act under which this action is instituted provides that "all taxes heretofore spread upon the assessment rolls of the various wards in the city of Rochester may be collected by the corporation counsel, either by action, or by supplementary proceedings, or by foreclosure of tax liens." The remedies in said act thus provided are "in addition to the other methods provided in the charter of the city of Rochester, and not dependent upon them or any of them." It seems to me that it is extending the process of statutory construction altogether too far to hold that the permission to bring suit for "all taxes heretofore spread upon the assessment rolls" includes the right to recover percentages and an unusual rate of interest expressly created by other statutes as a penalty for the nonpayment of taxes, and which penalties are applicable only in and to another and entirely different course of procedure for the enforcement of taxes. As I have endeavored to point out, there is no natural relation between the taxes originally assessed and these percentages and this high rate of interest, so that the former might fairly be said to draw after it as an incident the latter. In addition, so far as the percentages are provided as a charge for the cost of collection under the charter provisions, they have no application to an action at law where other statutes provide regular costs as a reimbursement for the expenses of maintaining the action.

It may be that it was the intention of the municipal authorities and of the Legislature that the enabling act should provide for collecting these extra sums in addition to the regular taxes. That must remain a matter of conjecture. Even if we should assume that that was the intention, and that it was manifested in some way of which we might take note, it still would not, in my judgment, warrant the construction placed upon the statute by the prevailing opinion. While legislative intent or purpose when adequately manifested may be utilized in construing doubtful enactments, absolute statutory provisions may not be wholly created therefrom. The "taxes spread upon the assessment rolls" did not include percentages and 12 per cent. interest, and, if we now decide that under the statute presented for review said latter sums may be recovered, it will, as it seems to me, amount to an interpolation in the statute of provisions which were not there placed by the Legislature.

While I do not see the danger from this conclusion excluding them which impresses itself upon the view of my associates, nor fear the

possibility that a corporation counsel might utilize the statute as a means of collecting a less sum from a taxpayer than may be collected under the charter provisions, still, if there were some risk, that would not be a sufficient foundation for construing into the statute words which are not there found. If the act is defective, its correction is a matter for the Legislature.

Moreover, while I reach the conclusion that neither percentages nor interest at a special rate may be collected in this action, I think that some interest may be collected. While an assessment.is not a judgment for all purposes, it does have binding force in fixing the amount of taxes to be paid and in liquidating the amount thereof. The ordinary rule is that, when default is made in the payment of a liquidated debt when due, interest is recoverable as damages from the date of default. Donnelly v. City of Brooklyn, 121 N. Y. 9, 19, 24 N. E. 17. The Code provides that an ordinary judgment for a sum of money rendered in a court of record or not of record shall bear interest from the time when it is rendered. This provision is simply a declaration of the rule at common law that damages are recoverable as an indemnity for non-payment of liquidated pecuniary demands at maturity when they should have been paid. Donnelly v. City of Brooklyn, 121 N. Y. 19, 24 N. E. 17. I think it will not be a strained interpretation to regard the enabling act as giving the unpaid taxes the ordinary incidents of judgments or contractual obligations in being, subject to enforcement by action, and in drawing legal interest from the date of default. The statute, by its effect, turned the unpaid taxes into personal obligations which were in default, and it may be held with propriety and naturally that the statute which conferred the right to recover the principal of these taxes by implication included also the right to recover the ordinary rate of interest which is natural:y and almost uniformly incident to a defaulted obligation.

This view, if correct, would authorize plaintiff to recover not only the amount of the taxes spread upon the roll, but the legal rate of interest from the date of default, and leads me so far as to concur in a reversal of the order which denied the right to recover any interest.